UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOLINE PRATT,

                Plaintiff,

     v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

                Defendant.

CASE NO. 14-cv-05651 JRC

ORDER ON PLAINTIFF'S COMPLAINT

     This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States Magistrate Judge, Dkt. 6). This matter has been fully briefed (*see* Dkt. 16, 23, 24).

     After considering and reviewing the record, the Court concludes that the ALJ failed to evaluate properly the medical evidence from an examining doctor. The ALJ's finding that plaintiff was capable of maintaining a moderate pace, as opposed to working

ORDER ON PLAINTIFF'S COMPLAINT - 1

as a slow pace, is not supported by substantial evidence in the record as a whole and contradicts multiple objective findings from Dr. Boltwood.

For this reason, this matter is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and remanded to the Acting Commissioner for further consideration consistent with this order.

## BACKGROUND

Plaintiff, JOLINE PRATT, was born in 1983 and was 9 years old on the alleged date of disability onset of January 1, 1993 (*see* AR. 176-81). Plaintiff did not complete high school and has not tried to get a GED (AR. 46-47). She worked briefly at McDonald's, but quit because she was too slow (AR. 47-48).

According to the ALJ, plaintiff has at least the severe impairments of "borderline intellectual functioning (20 CFR 416.920(c))" (AR. 26).

At the time of the hearing, plaintiff was living with her mother (AR. 46).

## PROCEDURAL HISTORY

Plaintiff's application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act was denied initially and following reconsideration (*see* AR. 58-70, 72-85). Plaintiff's requested hearing was held before Administrative Law Judge Stephanie Martz ("the ALJ") on September 11, 2012 (*see* AR. 38-57). On December 13, 2012, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 21-37).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or not the ALJ erred in rejecting Dr. Boltwood's opinion that plaintiff would not be capable of maintaining employment; (2) Whether or not the ALJ erred in affording significant weight to Dr. Lewy and Dr. Clifford, the non-examining sources; (3) Whether or not the ALJ assured the plaintiff's interests were considered at the hearing when plaintiff was represented by her mother; and (4) Whether or not these errors were harmful and resulted in a substantial likelihood of prejudice (*see* Dkt. 16, pp. 1-2).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

(1) **Whether or not the ALJ erred in rejecting Dr. Michael Boltwood's opinion that plaintiff would not be capable of maintaining employment**.

Plaintiff contends that the ALJ erred in the evaluation of the opinion of examining doctor, Dr. Michael Boltwood, Ph.D., noting in part, that Dr. Boltwood "opined that plaintiff would not be able to maintain gainful employment at a job that required even 'limited vocational skills such as a fast food restaurant'" (*see* Dkt. 16, p. 7). Defendant contends that the ALJ's reasoning was valid and the findings with respect to the opinion of Dr. Boltwood are supported by substantial evidence in the record.

When an opinion from an examining is contradicted by other medical opinions, the examining doctor's opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Dr. Boltwood examined plaintiff on June 23, 2011 and reviewed records (*see* AR. 279-85). When reviewing plaintiff's history, he noted that she was in special education classes throughout school, although she left school in the eighth grade because of teasing and harassment from other students (*see* AR. 280). Although she was home schooled after that point, Dr. Boltwood opined that because of "her mother's apparent intellectual difficulties I suspect that the extent and quality of [plaintiff's] home schooling was quite limited" (*see id.*). He previously had noted in his report that when testing plaintiff's intelligence and encountering a question that plaintiff could not answer, he would ask plaintiff's mother the same question and "she often would be unable to answer quite simple questions," noting for example, that "she was unable to tell me how many months there are in a year" (*see* AR. 79-80). Plaintiff has not received a high school diploma (*see* AR. 280). Plaintiff reported working briefly at McDonald's restaurant for approximately two months, but recalled that "she had a very difficult time learning tasks at work," and found it difficult to cook hamburgers (*see id.*).

Dr. Boltwood performed Wechsler Adult Intelligence Scale – III (WAIS-III) testing on plaintiff and noted that plaintiff "appeared to give her full effort throughout the testing," and he opined that her testing data were a "valid representation of her current

cognitive abilities" (AR. 282). He noted that her "Full Scale IQ of 78 is typically described as being in borderline range and places her at the 7th percentile for her age group" (*see id.*). Dr. Boltwood concluded that the results of her WAIS-III subtests results suggest that her greatest difficulties are "with verbal comprehension, processing speed and working memory" (*see id.*). Consistent with this conclusion, plaintiff's performance on the Trails A test demonstrated that she was below the 10th percentile and although she was able to complete the task, she worked slowly (*see id.*). Similarly, on the Trails B test plaintiff's performance again was below the 10th percentile, and again Dr. Boltwood noted that she "worked quite slowly" (*see id.*). Dr. Boltwood noted that both of plaintiff's Trails A and B scores "are below typical cutoffs for indicating cognitive impairment" (*see id.*).

Dr. Boltwood opined during plaintiff's mental status examination ("MSE") that plaintiff "presented with a somewhat childlike manner consistent with her intellectual limitations" (*see* AR. 281). He noted that plaintiff was cooperative and open throughout the interview, and that there was "no evidence of malingering or purposefully exaggerating her situation or symptoms" (*see id.*). Dr. Boltwood opined that plaintiff's fund of knowledge appeared limited and childlike, observing that she could not name the U.S. vice president or the governor of Washington, and was unable to describe what was east of Washington (*see id.*). He observed that when plaintiff was "asked what lay to the west she initially responded, 'Idaho,' but when told that this was incorrect was unable to provide any other answer" (*see id.*). Although plaintiff was able to complete serial seven

calculations, she counted on her fingers and calculated "the answers very slowly" (*see id.*).

Plaintiff demonstrated difficulty with abstract thought, explaining the meaning of the saying "the early bird gets the worm," as "It's probably saying that you should get up early;" and explaining "people in glass houses shouldn't throw stones" as "because it would break" (*see id.*). Dr. Boltwood noted that when "asked if she could provide any further interpretation, she repeatedly responded that she did not know what else the saying might mean" (*see id.*). Plaintiff also demonstrated difficulty with questions testing her insight and judgment, indicating that if she noticed smoke in a crowded theater, she would "ask somebody else if they saw the smoke too" (*see id.*). When plaintiff was "asked if there was any other way that she might respond or if there is anything else she could think to do she replied, 'Probably not'" (*see id.*).

Plaintiff reported having a driver's license, but noted that she needed to take the test six times (AR. 283). Although she indicated that she likes to shop for clothes, Dr. Boltwood noted that it appeared "that when she goes shopping she almost always has her mother with her" (*see* AR. 284). Although the WAIS-III Arithmetic Subtest indicates that plaintiff could calculate change involving whole dollars, she "could not calculate expected change when it involved both dollars and cents" (*see id.*).

Dr. Boltwood diagnosed plaintiff with Borderline Intellectual Functioning, and noted that plaintiff suffered from lack of vocational training and support (*see id.*). In his summary assessment, Dr. Boltwood indicated as follows:

> Given [plaintiff's] "borderline" intellectual functioning and the difficulty in having a clear understanding of her functional abilities based on her current activities, valid assessment of her ability to maintain gainful employment at this time is difficult and inevitably subjective. With these caveats in mind, it is my assessment, based on my interview and testing, that [plaintiff] is currently incapable of maintaining gainful employment. This tentative conclusion is based on her limited intellectual abilities in combination with her current naïve immaturity. In combination, I expect that she would not currently be able to maintain gainful employment, even in a job that requires limited vocational skills such as a fast food restaurant.

(AR. 284-85).

The ALJ gave significant weight to the aspects of Dr. Boltwood's assessment that supported a higher level of functioning but discounted all the aspects of his opinion that supported a lesser level of functioning (*see* AR. 284). For example, the ALJ indicated that Dr. Boltwood emphasized "that with some life skills, vocational training and support, [plaintiff] could work" (*see* AR. 284-85). However, what Dr. Boltwood actually opined was:

> As noted above, it is very unfortunate that [plaintiff] did not receive the type of life skills and vocational training that would have been available to her if she had stayed in school. With this type of appropriate training, supervision, and support, I believe that she has the potential to maintain gainful employment. I also believe that, with appropriate life skills training and ongoing support, she has the potential to live independently. I would strongly recommend that she be referred to the appropriate state and community programs that would hopefully provide her with the vocational training, life skills training, job placement services, and job support that are appropriate and needed by an individual with her intellectual limitations.

(AR. 285).

A review of Dr. Boltwood's opinion reveals that he indicated that it was unfortunate that plaintiff did not receive skills and training that would have allowed her

to be able to work (*see id.*). It also is clear that he indicated that if she obtained training, supervision, and support that she would have the potential to work in the future (*see id.*). This is buttressed by his recommendation that she receive such training, services, and support, as well as by his opinion that she needed receipt of such training, services and support if she was to gain the ability to work in the future (*see id.*). Therefore, the reliance by the ALJ on this aspect of Dr. Boltwood's opinion to support a finding that plaintiff was able to work at the time he made his assessment is not supported by substantial evidence in the record.

In addition, the ALJ gave "little weight" to Dr. Boltwood's opinion that plaintiff was not able to maintain employment (*see* AR. 32). The ALJ supported this conclusion by finding that "there is no objective evidence that she is unable to work entirely" (*see id.*). However, this finding by the ALJ ignores much of the objective evidence from Dr. Boltwood's testing, MSE and his interview results, discussed by the Court above.

The ALJ concluded that plaintiff's "performance on [MSE], her range of activities and the doctor's high GAF rating," demonstrate that plaintiff is capable of performing simple tasks at a moderate pace (*see id.*). As the Court has discussed, however, plaintiff's performance on the MSE demonstrates through multiple objective tests that plaintiff "worked quite slowly" (*see, e.g.*, AR. 282).

Dr. Boltwood concluded that the results of her WAIS-III subtests suggest that her greatest difficulties include problems with "processing speed" (AR. 282). Similarly, plaintiff's performance on Trails A demonstrated that she was below the 10th percentile and she worked slowly (*see id.*). Similarly, on the Trails B test plaintiff's performance

again was below the 10th percentile, and again Dr. Boltwood noted that she "worked quite slowly" (*see id.*). In addition, during the MSE, plaintiff was able to complete serial seven calculations, but only by counting on her fingers and by calculating "the answers very slowly" (*see* AR. 281). During the MSE, plaintiff also demonstrated difficulty with questions testing her fund of knowledge, her ability for abstract thought, and her insight and judgment (*see id.*). Therefore, the Court concludes that the ALJ's finding that plaintiff's MSE demonstrates that plaintiff was capable of working at a moderate pace is not supported by substantial evidence in the record as a whole (*see* AR. 32). To the contrary, plaintiff's MSE demonstrates that plaintiff only was capable of completing simple tasks "very slowly" (*see* AR. 281).

Similarly, plaintiff's GAF score is an overall assessment encompassing many aspects of functioning, and the "Social Security Administration has not endorsed the GAF scale for use in the Social Security and SSI disability programs, and has indicated that GAF scores have no 'direct correlation to the severity requirements in the mental disorders listings.'" *See De Los Reyes v. Comm'r of Soc. Sec. Admin.*, No. 12-CV-02048-AC, 2014 WL 61320 at *13, 2013 U.S. Dist. LEXIS 182768 at *37 (D. Oregon December 5, 2103) (*citing* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. § 50746-01 (Aug. 21, 2000); *Thomas v. Astrue*, CV 07-8040-PLA, 2009 U.S. Dist. LEXIS 5104, 2009 WL 151488 at *6 (C.D. Cal. Jan. 21, 2009)). Plaintiff's GAF score does not demonstrate that plaintiff is capable of working at a moderate pace.

Finally, although the ALJ concludes that plaintiff's "range of activities" demonstrates that plaintiff is capable of working at a moderate pace, the ALJ does not specify a single activity that demonstrates that plaintiff is capable of working at a moderate pace as opposed to the very slow pace demonstrated by her MSE and WAIS-III tests. Plaintiff's activities included "attending to self-care, preparing meals, household chores, using the computer, grocery shopping and running errands with her mother," as well as "ice-skating, swimming, watching movies, and taking walks on the beach" (*see* AR. 31). The ALJ does not cite any evidence in the record demonstrating that any of these activities was performed at a moderate pace as opposed to at a slow pace.

For the reasons stated, and based on the record as a whole, the Court concludes that the ALJ's finding that plaintiff's performance on MSE, her range of activities, and plaintiff's GAF rating demonstrate that plaintiff is capable of working at a moderate pace is not supported by substantial evidence in the record as a whole (*see* AR. 32). The ALJ did not explain why her assessment more correct that the psychologist who performed extensive testing of plaintiff. However, when an ALJ seeks to discredit a medical opinion, she must explain why her own interpretations, rather than those of the doctors, are correct. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence

of substantial documentation") (*quoting Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987) (*quoting Lebus v. Harris*, 526 F.Supp. 56, 60 (N.D. Cal. 1981))); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)).

Dr. Boltwood conducted extensive testing of plaintiff, and many of plaintiff's test results reveal that plaintiff is capable of performing simple tasks only at a very slow pace. The ALJ's rejection of Dr. Boltwood's opinion that plaintiff is incapable of maintaining gainful employment, and that "she would not currently be able to maintain gainful employment, even in a job that requires limited vocational skills such as a fast food restaurant," is not supported by substantial evidence in the record as a whole (*see* AR. 284-85). The ALJ's contrary finding that plaintiff is capable of performing work at a moderate pace contradicts the objective testing results of Dr. Boltwood.

The Court also concludes that this error is not harmless.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court

also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). Courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

Here, in contrast with the objective testing results of Dr. Boltwood, the ALJ found that plaintiff had the residual functional capacity ("RFC") to perform "work at a moderate pace" (*see* AR. 29, 32). The ALJ utilized this RFC when presenting a hypothetical to the vocational expert ("VE") and when making her step five finding in reliance on the VE's testimony that plaintiff could perform work in the national economy (*see* AR. 33-34, 56). The ALJ's ultimate conclusion that plaintiff was not disabled was based on the VE's testimony, which was based on this RFC (*see id.*). Furthermore, tellingly, the VE testified that if a hypothetical individual with plaintiff's RFC "was slower in speed and ended up being approximately twenty percent slower than the average worker," such individual would be "an hour and a half less competitive than their co-workers and I don't believe that employers would tolerate that, at least for very long at any job" (AR. 56-57). Therefore, had the ALJ included in plaintiff's RFC that she only was capable of performing work at a slow pace, it is likely that she would have been required to find plaintiff disabled (*see id.*).

However, although likely, it is not evident that the objective results of plaintiff's testing with Dr. Boltwood require a finding that plaintiff would be off-pace by twenty percent. Therefore, this matter should be reversed and remanded for further administrative proceedings to determine the exact amount by which plaintiff's pace is reduced if the objective results obtained by Dr. Boltwood are fully accommodated into plaintiff's RFC. *See Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citations omitted) (the matter should not be remanded with a direction to award benefits if it is not clear from the record that the ALJ would be required to find plaintiff disabled were the inappropriately discredited evidence credited in full).

(2) **Whether or not the ALJ erred in affording significant weight to Dr. Lewy and Dr. Clifford, the non-examining sources and whether or not the ALJ assured that plaintiff's interests were considered at the hearing when plaintiff was represented by her mother**.

Because the Court has concluded that this matter must be reversed and remanded for further consideration of the medical evidence, *see supra*, section 1, plaintiff's remaining contentions will not be discussed herein.

## CONCLUSION

The ALJ's finding that plaintiff was capable of maintaining competitive work at a moderate pace is not supported by substantial evidence in the record as a whole and is contrary to the medical evidence obtained through objective testing by examining doctor, Dr. Boltwood.

1  Based on this reason and the relevant record, the Court **ORDERS** that this matter
2  be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to
3  the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 17th day of March, 2015.

_____
J. Richard Creatura
United States Magistrate Judge